UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE PROJECT SCHOOL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:12-cv-01028-SEB-DKL |
| vs. ) | |
| ) | |
| CITY OF INDIANAPOLIS and GREGORY ) | |
| A. BALLARD, *in his official capacity as* ) | |
| *Mayor of Indianapolis/Marion County,* ) | |
| *Indiana*, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This cause is presently before the Court on the Emergency Motion to Expedite and Consolidate Hearing on Merits of Injunctive Relief [Docket No. 12], filed July 29, 2012 by Plaintiff, The Project School ("TPS").  On July 23, 2012, TPS filed its Verified Complaint [Docket No. 1-1] in the Marion Superior Court, asserting two causes of action:  (1) a 42 U.S.C. § 1983 claim alleging violation of procedural due process protected by the Fourteenth Amendment to the Constitution, and (2) promissory estoppel.  TPS contemporaneously moved for a temporary restraining order and a limited permanent injunction to prevent Defendants from revoking TPS's charter until June 30, 2013. Following receipt of a second motion for injunctive relief, the state court granted TPS's motion on July 24, 2012 and temporarily enjoined Defendants from any activities that

1

would effectively prevent the School from opening on August 6, 2012 as scheduled.[1]  *See* Docket No. 1-7.  Defendants removed the lawsuit to federal court on the basis of federal question jurisdiction[2] on July 26, 2012.  Hoping to maintain the status quo under the state court order, TPS filed its Motion for Preliminary Injunction [Docket No. 10] the following day.  In the instant motion, TPS seeks permanent injunctive relief as described above and, pursuant to Federal Rule of Civil Procedure 65(a), seeks an expedited, consolidated hearing on the merits of preliminary and permanent injunctive relief.  The motion is fully briefed, and the Court, being duly advised in the matter, DENIES both of Plaintiff's motions.

Bearing in mind that time is of the essence, we begin with a very brief recitation of the facts.  TPS is an Indianapolis charter school, which the Indiana Code defines as "a public elementary or secondary school . . . that:  (1) is nonsectarian and nonreligious; and (2) operates under a charter."  Ind. Code § 20-24-1-4.  On August 5, 2008, in his official capacity as Mayor of the City of Indianapolis, Gregory Ballard agreed to serve as TPS's "sponsor" within the meaning of Indiana Code § 20-24-1-9(3).[3]  Pl.'s P.I. Br. at 2.  The parties concomitantly executed a Charter Agreement,[4] which has governed the continuous

---

[1]This order, which also enjoined Defendants from "promoting the removal of students from TPS enrollment or teachers from TPS staff," was to expire at 4:00 p.m. on August 3, 2012, barring extension by the Marion Superior Court.  Docket No. 1-1 at 2.
[2]28 U.S.C. § 1331.
[3]For purposes of the charter school statute, a "sponsor" is "one of the following . . . (3) [t]he executive . . . of a consolidated city."  Ind. Code § 20-24-1-9(3).  The term "executive" includes the mayor of a city.  *Id.* § 36-1-2-5.
[4]The Charter Agreement is "governed by, subject to, and construed under the laws of the State of Indiana."  Pl.'s P.I. Br. Ex. A § 18.2.

operation of TPS since the 2008-09 school year.  *See id.* Ex. A.  One of the Mayor's Office's established sponsorship practices—not only for TPS, but for every other charter school it supervised—is to conduct a Fourth Year Charter Review (FYCR) and associated site visit.  Pl.'s P.I. Br. at 2.  Defendants furnished a preliminary draft of the FYCR to TPS's board of directors by letter dated July 17, 2012.  *See id.* Ex. G.  This document served two additional purposes:  first, to notify TPS of Mayor Ballard's intent to revoke the school's charter; and second, to inform TPS of its right to appeal the notice on or before August 7, 2012, when a final revocation decision would issue.  *Id.*

Both parties concede that the FYCR draft report was not the first indication that Defendants were concerned about the quality of TPS's operations and performance.  Between May and July of 2012, TPS officials attempted to discuss "media reports critical of the [s]chool's performance" as well as "ways to address data and issues raised during the [FYCR] process" with the Mayor's Office.  Pl.'s P.I. Br. at 3.  Each time, they were instructed to wait until all the data required to complete the FYCR had been collected and analyzed.  *See, e.g.*, *id.* Ex. E.  The Mayor's Office indicated on July 12, 2012 that it "anticipate[d] receiving the[se] final pieces of data . . . in August" and provided a document to "give [TPS] a sense of what [its] FYCR [would] look like."  Importantly, Defendants did not explicitly guarantee TPS a fifth year of operation, let alone a review of the school's fifth year plan.  *See id.*[5]  Notwithstanding these communications, on July 17,

---

[5]TPS was informed only that an anticipated meeting "would be the opportune time for [the parties] to discuss the [fif]th year plan."  Pl.'s P.I. Br. Ex. E.

2012, Defendants appointed interim trustees to facilitate enrollment of TPS students in other schools. TPS further alleges that around the same time, agents of the Mayor's Office verbally represented to parents and one media outlet that its decision to revoke TPS's charter was "final." Pl.'s P.I. Br. at 6, Exs. I, J. On July 20, 2012, TPS filed two responses to the Mayor's notice of intent to revoke. Compl. ¶ 27. TPS now entreats this court to find that, "[u]nless Defendants are immediately enjoined . . . from the proposed school closing activities . . ., it [will be] impossible to maintain TPS's student enrollment, upon which it is both manifestly and financially dependent for the 2012-2013 academic year and permanently." *Id.* ¶ 56.

To determine whether injunctive relief is appropriate, a district court engages in a two-pronged analysis consisting of a threshold phase and a balancing phase. The party seeking injunctive relief must satisfy three requirements to survive the threshold phase; it must show (1) that the claim has some likelihood of success on the merits; (2) that, absent a preliminary injunction, it will suffer irreparable harm pending final resolution of its claim; and (3) that no adequate legal remedy will suffice. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Permanent injunctive relief requires the same threshold showing, save one important distinction: the plaintiff must demonstrate *actual* success on the merits. *Plummer v. Am. Inst. of Certified Pub. Accountants*, 97 F.3d 220, 229 (7th Cir. 1996) (noting that the relevant inquiry is "whether [the plaintiff] has *in fact* succeeded on the merits"); *see also Amoco v. Vill. of Gambell*, 480 U.S. 531, 546 n.12

4

(1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."). "If the court determines that the moving party has failed to demonstrate *any one of [the] threshold requirements*, it must deny the injunction" and refrain from the balancing phase of its analysis. *Girl Scouts of U.S.A., Inc.*, 549 F.3d at 1086 (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)) (emphasis added). This is precisely the situation before the Court: TPS has not established that either of its claims has some likelihood of succeeding on the merits, not to mention actual success. Accordingly, we shall abbreviate our discussion by limiting it to the first requirement of the threshold phase and omitting the balancing phase.

Our first inquiry in the present matter is the viability of TPS's § 1983 constitutional claim. Success on the merits of this claim requires a showing that, while acting under color of state law, the defendant caused the plaintiff to suffer a constitutional injury. 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights; rather, it "provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003). Accordingly, the Court must first identify the specific constitutional or statutory rights purportedly infringed. *Id.* These specific rights dictate "the appropriate analytical lens through which facts are to be viewed." *Payne ex rel. Hicks v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998). Here, TPS contends that, while acting under color of state law, Defendants infringed upon its Fourteenth Amendment right to due process. The Fourteenth Amendment provides, in relevant part, that no state "shall

5

deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Due process mandates an opportunity to be heard "at a meaningful time and in a meaningful manner," but only where a plaintiff has properly alleged an infringement of a protected property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

As TPS has repeatedly informed the Court, the school is committed to its goal of commencing the 2012-13 school year on August 6, 2012. We cast no aspersions on TPS's expressed devotion to public education; indeed, we applaud the school's enthusiastic and principled advocacy over the past few years. Regrettably, however, whereas TPS's energy abounds, its understanding of the applicable law falls critically short. The school first alleges that its "ability to operate as a charter school for the 2012-2013 school year" is a protected property interest. Pl.'s Emerg. Mot. at 6. Further, TPS contends that its very existence and operation under the Charter Agreement are "not mere unilateral expectations or otherwise subject to the discretionary whims of the Mayor." Pl.'s P.I. Br. at 12. We disagree. A plain reading of Indiana's charter school statute, as applied to the relevant facts, plainly repudiates this argument.

We find TPS's apparent belief that its existence is not subject to Defendants' discretion patently unreasonable. Indiana law, which governs the Charter Agreement, affords the sponsor of a charter school significant—indeed, almost total—discretion. Notably, the charter school statute frames the decision to revoke a charter as a discretionary matter, as follows:

6

> Notwithstanding the provisions of the charter, a sponsor that grants a charter *may* revoke the charter at any time before the expiration of the term of the charter *if the sponsor determines* that at least one (1) of the following occurs: (1) The organizer[6] fails to comply with the conditions established in the charter; (2) The charter school established by the organizer fails to meet the educational goals set forth in the charter; (3) The organizer fails to comply with all applicable laws; (4) The organizer fails to meet generally accepted government accounting principles; [or] (5) One (1) or more grounds for revocation exist as specified in the charter.

Ind. Code § 20-24-9-4 (emphases added). The use of the word "may" is significant; this word "is precatory and 'customarily connotes discretion.'" *Exelon Generation Co. v. Local 15, Int'l B'hood of Elec. Workers*, 676 F.3d 566, 571 (7th Cir. 2012) (internal citations omitted). Other provisions of the statute support our conclusion that decisionmaking regarding TPS's very existence falls squarely within the ambit of Defendants' sponsorship duties. For instance, a sponsor *may* grant a charter to an organizer to operate a charter school," Ind. Code § 20-24-3-1, and *may* reject a charter school proposal, *see id.* § 20-24-3-11.

With the foregoing provisions in mind, it is clear that Defendants' decision to revoke TPS's charter was both permissible under Indiana statute and entirely within Defendants' prerogatives. Between July 1, 2008 and June 30, 2010, the State Board of Accounts (SBOA) audited TPS and found "significant deficiencies and material weaknesses in [TPS's] management" of federal grant monies. Defs.' Resp. Ex. 3 at 1. SBOA found, *inter alia*, that TPS: had overdrawn its general fund by nearly $225,000 as

---

[6] "Organizer" refers to the not-for-profit group that enters into a contract to operate as a charter school; thus, for purposes of this lawsuit, the "organizer" is TPS. *See* Ind. Code § 20-24-1-7.

of June 30, 2010; regularly used restricted funds to pay salaries; failed to submit timely financial data to the Mayor's Office when requested to do so; failed to maintain a balanced budget between 2009 and 2012; and regularly used its revolving line of credit to pay expenses.  *Id.* at 1-2; *see also* Defs.' Resp. Ex. 5 (indicating TPS's massive debt load and projected negative cash flow).  In the aggregate, these facts support a finding that, pursuant to Indiana Code § 20-24-9-4(5), "one (1) or more grounds for revocation exist as specified in the charter."  Specifically, they constitute compelling evidence that TPS was "becom[ing] insolvent," which is one of the Charter Agreement's permissible bases for revocation of the charter.  Charter Agrmt. § 16.4(j).

The facts also support revocation of TPS's charter under Indiana Code § 20-24-9-4(2), which permits the sponsor to cease school operations if the school fails to meet the charter's educational goals.  The uncontroverted evidence before the Court paints a bleak picture of the school in this respect.  In its charter application, TPS stated that its primary goals were to have each student reading, writing, and computing "at or above grade level" within his or her first three consecutive years of study.  Charter App. at 4.  Reports from the Mayor's Director of Charter Schools document clear failures with respect to this goal, citing "failing ISTEP+ test scores for all of [TPS's] year[s] operating as a charter school."  Defs.' Resp. Ex. 1 at 2.  In fact, disaggregated state test results placed TPS in the bottom five percent of Marion County schools and the bottom two percent of Indiana schools.  *Id.* at 3.  The Director of Charter Schools also made a specific finding with respect to TPS's educational goals:

> [I]n 2011-2012, only 36.0% of students who had been enrolled for three consecutive years or more demonstrated proficiency in both English and mathematics. This falls short of the school's academic goal, as stated in the Charter Agreement, that by the third year of enrollment, every student would be able to read, write and compute as measured by state standardized tests.

*Id.* at 4.

Faced with such dismal results respecting TPS's academic and financial health, Mayor Ballard's decision was factually reasonable and legally permissible. His revocation of TPS's charter was justified not only by concrete facts, but also by statutory law which clearly afforded him discretion in the matter. Consequently, TPS's argument that somehow its existence is a "property right" for purposes of Fourteenth Amendment due process is a nonstarter.

TPS also asserts that "[l]egitimate and reasonable reliance on a promise from the state can be the source of property rights protected under the Due Process Clause." Pl.'s Reply at 5 (citing *Vail v. Bd. of Educ. of Paris Union Sch. Dist. No. 95*, 706 F.2d 1435, 1440 (7th Cir. 1983)). Although indisputably true, this legal principle is applicable only with a showing as to one thing TPS has failed to demonstrate: an actual promise. In *Vail*, the Seventh Circuit alluded to its prior holding in *McElearney v. University of Illinois*, 612 F.2d 285, 290 (7th Cir. 1979), which held that informal assurances do not give rise to a constitutionally protected property right. Additional Seventh Circuit case law supports this proposition; for instance, in *Upadhya v. Langenberg*, 834 F.2d 661, 665 (7th Cir. 1987), the court held that vague statements (and a party's understanding of what has been said to him) "do not transmute probabilities into entitlements." The Seventh Circuit has

9

also noted "overwhelming" authority establishing that even repeated assurances of being "on the right track" or being "certain[ to] be retained if . . . performance is satisfactory" do not create an enforceable property right. *Colburn v. Trs. of Ind. Univ.*, 973 F.2d 581, 592 (7th Cir. 1992). Having reviewed the inter-party communications in the record, we can point to no statements that rise above the level of "vague assurances," guesses, or anticipated results. A promise requires something much more, strengthening our view that none of Defendants' statements to Plaintiff suffice to provide a basis for any property right. Having found no evidence of any actionable "promise" made by Defendants, we need not address Plaintiff's promissory estoppel claim, which cannot survive in the absence of a promise.

Because TPS has failed to demonstrate the existence of a protected property right under the Fourteenth Amendment or the critical element of promissory estoppel, further analysis is unnecessary. It is patently clear that TPS has failed to establish any likelihood of succeeding on the merits of either claim it has advanced against Defendants. By extension, TPS has similarly faltered in its efforts to demonstrate actual success, as required for permanent injunctive relief. TPS's failures at this stage of the analysis foreclose any need for the Court to convene a hearing as TPS has requested that we do, given that oral argument cannot revitalize the school's case or overcome its deficiencies. Therefore, we DENY Plaintiff's request for an expedited, consolidated hearing on the matter. Additionally, in accordance with guiding case law, we DENY Plaintiff's Motions for preliminary and permanent injunctive relief.

10

IT IS SO ORDERED.

Date: 07/31/2012

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Sean Thomas Devenney
DREWRY SIMMONS VORNEHM, LLP
sdevenney@drewrysimmons.com

Jayme E. Donnelson
DREWRY SIMMONS VORNEHM, LLP
jdonnelson@dsvlaw.com

Amanda J. Griffith
Office of Corporation Counsel
agriffith@indy.gov

Andrew J. Mallon
DREWRY SIMMONS VORNEHM, LLP
amallon@drewrysimmons.com

Clifford R. Whitehead
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
clifford.whitehead@indy.gov

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org